UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROGER J. HASKINS

        Plaintiff,

v.                               **REPORT AND RECOMMENDATION**
                                       **08-CV-1107 (FJS)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

Plaintiff Roger Haskins brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

## II.    Background

Plaintiff applied for DIB on August 22, 2005, alleging an onset date of June 15, 1995 (R. at 81-85).[2] Plaintiff alleges disability due to heart, back, right shoulder, and lung impairments, as well as pancreatitis, obesity, and hemorrhoids. His application was denied initially on September 22, 2005 (R. at 30-32). Plaintiff filed an untimely request

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated December 11, 2009.
[2] Citations to the underlying administrative record are designated as "R."

1

for a hearing on March 7, 2006 (R. at 28). On April 7, 2006, the ALJ dismissed Plaintiff's request for a hearing after finding no good cause for the late filing (R. at 28-29). Plaintiff appealed the ALJ's dismissal on April 17, 2006 (R. at 35). On July 28, 2006, the Appeals Council found good cause for the late filing and remanded to the ALJ (R. at 40-42).

On June 1, 2007, Plaintiff appeared *pro se* before the ALJ (R. at 490-505). The hearing was postponed in order to allow Plaintiff to obtain representation. Id. Plaintiff appeared before the ALJ, with representation, on August 16, 2007 (R. at 506-25). The ALJ considered the case *de novo* and, on December 27, 2007, issued a decision finding Plaintiff not disabled from June 15, 1995, Plaintiff's alleged onset date, through September 30, 2001, Plaintiff's date last insured ("DLI") (R. at 18-24). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on August 27, 2008 (R. at 7-10). On October 16, 2008, Plaintiff filed this action.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

### III.   Discussion

#### A.   Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v.

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process[4] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must

---

[4]The five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

Based on the entire record, the Court recommends remand for failing to properly evaluate Plaintiff's credibility and to fully develop the record.

### B. Analysis

#### 1. The Commissioner's Decision

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff's DLI was September 30, 2001 (R. at 20); (2) Plaintiff had not engaged in substantial gainful activity from June 15, 1995, his alleged onset date, through his DLI (R. at 20); (3) Plaintiff's coronary artery disease and aortic insufficiency were severe impairments (R. at 20); (4) Plaintiff's right shoulder and cervical disc disorders were not severe impairments (R. at 21); (5) Plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I" (R. at 21); (6) Through Plaintiff's DLI, Plaintiff retained

> the residual functional capacity to lift and/or carry 20 pounds occasionally and ten pounds frequently, stand and/or walk for a total of six hours in an eight-hour workday, sit for a total of six hours in an eight-hour workday, and push and/or pull 20 pounds occasionally and ten pounds frequently. In addition, the claimant was unable to repetitively push and/or pull with the right upper extremity, could reach above shoulder level only occasionally, and needed to avoid temperature extremes and areas with high humidity or wetness

(R. at 21); (7) Plaintiff's "subjective complaints [were] only partially credible" (R. at 22);

(8) At the time of Plaintiff's DLI, he was an individual closely approaching advanced age (R. at 23); (9) Plaintiff had a limited education and had the ability to communicate in English (R. at 23); (10) Based on Medical-Vocational Rule 202.11,[5] there were jobs in the national economy, in substantial numbers, that Plaintiff could perform (R. at 23). Ultimately, the ALJ found that Plaintiff was not under a disability at any time from his alleged onset date through September 30, 2001, his DLI (R. at 24).

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff contends that a) the ALJ erred in analyzing Plaintiff's credibility; b) the ALJ failed in his duty to fully develop the record; c) the ALJ erred in finding several of Plaintiff's impairments to be non-severe; d) the residual functional capacity ("RFC") is not supported by substantial evidence; and e) the ALJ erred in relying upon Medical-Vocational Rule 202.11 to find Plaintiff not disabled.

### a) The ALJ Erred in Assessing Plaintiff's Credibility

Plaintiff argues that the ALJ improperly evaluated his credibility. Plaintiff's Brief, pp. 22-24. Plaintiff further argues that the ALJ erred in failing to consider Plaintiff's good work history. Id.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to

---

[5] Medical-Vocational Rule 202.11 directs a finding of not disabled for an individual closely approaching advanced age with a limited or less education, who can perform light work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 202.11.

accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[6] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

Here, the ALJ failed to complete the necessary two-step credibility finding. Instead, the ALJ merely "f[ound] the claimant's subjective complaints only partially

---

[6] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

credible" (R. at 22). This is error and worthy of remand. See Hogan v. Astrue, 491 F.Supp.2d 347, 352-353 (W.D.N.Y. 2007) (remanding, in part, because the ALJ failed to find whether plaintiff's impairments "could reasonably be expected to produce the pain . . . she alleged" despite noting that the ALJ "carefully review[ed]" the seven factors set forth in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii)); Crysler v. Astrue, 563 F.Supp.2d 418, 442 (N.D.N.Y. 2008) (finding the ALJ's credibility analysis flawed, in part, because he failed to make the necessary finding at step one); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.").

The ALJ also failed to consider Plaintiff's good work history in his credibility analysis. The record indicates a consistent, albeit low income, earning history from 1962 through 1996. Therefore, it was error for the ALJ to not consider Plaintiff's good work history when evaluating his credibility. See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."); see also Wilber v. Astrue, No. 07-CV-56S, 2008 WL 85037, at *3 (W.D.N.Y. Mar. 28, 2008) (remanding, in part, for failure to consider plaintiff's good work history of over twenty years in his credibility analysis).

Therefore, the Court recommends remand to allow the ALJ an opportunity to re-evaluate Plaintiff's credibility. The ALJ must also consider Plaintiff's good work history in that analysis.

### b) The ALJ Failed to Fully Develop the Record

Plaintiff argues that the ALJ erred in failing to fully develop the record. Plaintiff's Brief, pp. 18-22. Specifically, Plaintiff argues that the ALJ erred in failing to re-contact Plaintiff's treating physicians concerning the onset of Plaintiff's limitations as well as in failing to obtain an orthopedic consultative examination. Defendant argues that the ALJ fulfilled his duty to develop a complete record. Defendant's Brief, pp. 13, 16.

Plaintiff filed for DIB on August 22, 2005, alleging an onset date of June 15, 1995 (R. at 25). In order to have qualified for DIB during the relevant time period, Plaintiff must have demonstrated a disabling condition on or before September 30, 2001, his DLI. Id. Thus, the relevant time period for this case is June 15, 1995, Plaintiff's alleged onset date, through September 31, 2001, Plaintiff's DLI.

Although the record contains ample evidence of Plaintiff's impairments, the vast majority of that evidence postdates Plaintiff's DLI.  Moreover, the medical evidence created prior to Plaintiff's DLI is a sparse compilation of treatment notes; no opinion evidence concerning Plaintiff's ability to work despite his limitations was created during the relevant time period. Also, no physician offered a retrospective opinion of Plaintiff's functional limitations before his DLI. Although a Social Security Administration ("SSA") disability analyst was asked to review the record and complete a physical RFC form for the relevant time period, he was unable to complete the form because the "information [was] insufficient to establish a[n] RFC prior to the DLI" (R. at 195).

The only opinion evidence of Plaintiff's impairments that related back to before his DLI was a letter written by Dr. Robert Carhart, Jr., Plaintiff's treating cardiologist, on August 6, 2007 (R. at 429). However, Dr. Carhart's letter failed to address Plaintiff's

ability to function despite his impairments. Indeed, Dr. Carhart merely opined that Plaintiff "has had difficulty in terms of working and has been partially or fully disabled since . . . March of 2000." Id.[7] Thus, while Dr. Carhart's letter suggests that Plaintiff experienced limitations from his cardiac impairments before his DLI, Dr. Carhart failed to offer any functional assessments of those limitations. Therefore, the ALJ had no opinions of Plaintiff's functional limitations, for the relevant time period, on which to rely when making his decision.

The ALJ has an affirmative duty to develop the record. Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). This duty exists regardless of whether Plaintiff has counsel or is continuing *pro se*. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). If the evidence received is not adequate to determine whether an individual is disabled, additional information must be gathered by first re-contacting Plaintiff's treating physician. 20 C.F.R. § 404.1512(e)(1). To obtain further medical evidence, the ALJ may also request that an individual attend a consultative examination. 20 C.F.R. § 404.1512(f). Finally, the ALJ has the option of obtaining evidence from "medical experts on the nature and severity of [an individual's] impairment(s)." 20 C.F.R. § 404.1527(f)(2)(iii).

Here, the ALJ failed in his duty to fully develop the record. As acknowledged by the ALJ at Plaintiff's first hearing, the records before September 30, 2001 "are very

---

[7] The letter was addressed "To Whom It May Concern" (R. at 429). Dr. Carhart stated that Plaintiff requested he write the letter "to clarify some issues with [Plaintiff's] overall medical status." Id. Dr. Carhart wrote that he began treating Plaintiff on March 14, 2000, to decrease his hypertension before a right hemicolectomy, "surgical removal of the right colon." Id.; Dorland's Illustrated Medical Dictionary, 847 (31st ed. 2007). After surgery, Dr. Carhart found that Plaintiff's "aorta was . . . dilated and he was also noted to have moderate to moderately severe aortic insufficiency. . . . [Plaintiff] required regular treatment with adjustments of medications. Ultimately he underwent his first catheterization in November of 2002 which revealed his coronary disease and confirmed the presence of his aortic insufficiency." Id.

skimpy" (R. at 493). However, despite the "skimpy" record prior to Plaintiff's DLI, the ALJ failed to avail himself of the several avenues available to him in an attempt to obtain the necessary medical evidence. The ALJ failed to re-contact Plaintiff's treating physicians, failed to obtain an SSA consultative examination, and failed to request the opinion of a medical expert.

In order to obtain the necessary opinions of Plaintiff's ability to function despite his impairments, the ALJ must first re-contact Plaintiff's treating physicians. 20 C.F.R. § 404.1512(e)(1). Indeed, "[t]he duty of an ALJ to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations." Dickson v. Astrue, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) (citing Devora v. Barnhart, 205 F.Supp.2d 164, 172 (S.D.N.Y. 2002)). Because of this 'particularly important' duty, the ALJ has an affirmative obligation to make reasonable efforts to obtain from Plaintiff's treating physicians any necessary reports, including an assessment of Plaintiff's functional limitations. Dickson, 2008 WL 4287389, at *13. The record documents treatment by several physicians. Of these physicians, at least two are worth re-contacting: Dr. Carhart and Dr. John Michaels.

Dr. Carhart, Plaintiff's cardiologist, began treating Plaintiff on March 14, 2000 (R. at 274-75). Dr. Carhart completed two separate functional assessments of Plaintiff's ability to work (R. at 199-203, 208-14). However, both reports post-date the relevant time period by several years and neither indicted Plaintiff's limitations before Plaintiff's

DLI.[8] Thus, Dr. Carhart offered no functional assessments of Plaintiff's ability to work during the relevant time period. There is no indication that the ALJ requested that Dr. Carhart provide an opinion of Plaintiff's limitations during the relevant time period retrospectively. Logic dictates, however, that heart disease is a progressive one, suggesting that his condition noted by Dr. Carhart in 2000, significantly predated the examination time-frame as further discussed below.

Dr. Michaels began treating Plaintiff on August 26, 2005 (R. at 177). Dr. Michaels treated Plaintiff for several impairments including depression, high cholesterol, and diabetes (R. at 431-488). Dr. Michaels completed a medical assessment of Plaintiff's current functional abilities on May 23, 2007 (R. at 216-22). However, he offered no opinion as to the onset date of the limitations he found in his assessment (R. at 221). While the Court acknowledges that any opinion from Dr. Michaels would be retrospective, the Second Circuit

> ha[s] observed, repeatedly, that '[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement [*i.e.,* insured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.'

Lisa v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 40, 44 (2d Cir. 1991) (citations removed). Thus, although Dr. Michaels did not treat Plaintiff prior to his DLI, he may very well have probative evidence concerning Plaintiff's functional limitations

---

[8] Dr. Carhart completed his first medical report on January 12, 2006 (R. at 198-203). Dr. Carhart did not indicate the onset date of those limitations. Dr. Carhart also wrote a letter "To Whom It May Concern," on March 9, 2007 (R. at 204). Dr. Carhart opined that Plaintiff had been unable to work as of September 2005. Id. Dr. Carhart completed a second medical report on May 21, 2007 (R. at 208-14). Dr. Carhart opined that the limitations found in that assessment began on September 21, 2005 (R. at 213). Dr. Carhart's final letter was written on August 6, 2007 (R. at 429). Dr. Carhart opined that Plaintiff had been "partially or fully disabled" as of March 2000. Id.

during that time period. As with Dr. Carhart, there is no indication that the ALJ requested a retrospective opinion from Dr. Michaels.

If Plaintiff's treating physicians are unable to provide the necessary evidence, the ALJ must then attempt to obtain the evidence through other channels. To this end, the ALJ may obtain an SSA consultative examination. 20 C.F.R. § 404.1512(f). The ALJ may also request an opinion from a medical expert. 20 C.F.R. § 404.1527(f)(2)(iii). The Court acknowledges that a number of years have passed since Plaintiff's DLI. However, this does not absolve the ALJ of his duty to attempt to obtain a fully developed record for the time period at issue. 20 C.F.R. § 404.1512(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary . . . .").

Defendant argues that the ALJ, and the SSA, fulfilled their duties to develop a complete record by making several requests for the necessary evidence. Defendant's Brief, p. 13. The ALJ stated in his decision "that the Office of Disability Adjudication and Review has made every reasonable effort to obtain medical evidence on behalf of the client" (R. at 21). The ALJ also stated at Plaintiff's first hearing that "[w]e've written to doctors for those records, and they apparently destroyed them. They're no longer available because it's too old" (R. at 493). However, the ALJ failed to state that he requested opinions, apart from the records, from Plaintiff's treating physicians concerning Plaintiff's ability to work before his DLI. Further, the Court could find no indication in the record that the ALJ requested these opinions. Indeed, "[i]t is the *opinion* of the treating physician that is to be sought; it is his *opinion* as to the existence and

13

severity of a disability that is to be given deference." Peed v. Sullivan, 778 F.Supp. 1241, 1246 (E.D.N.Y. 1991) (emphasis in original). Thus, Defendant's argument must fail. Furthermore, as previously stated, the ALJ had other options to obtain evidence if Plaintiff's treating physicians could not supply their opinions. However, the ALJ failed to obtain a consultative examination and did not request the opinion of a medical expert.

Based on the foregoing, the Court recommends remand to allow the ALJ to re-contact Plaintiff's treating physicians in an attempt to obtain their opinions of Plaintiff's ability to work during the relevant time period. In the event that these physicians are unable to provide the necessary information, the ALJ must further develop the record by utilizing either or both of the following: i) request a consultative examination; ii) solicit the opinion evidence from a medical expert.

### c) The Court Need Not Reach Whether the ALJ Erred at Step Two of the Sequential Analysis

Plaintiff argues that the ALJ erred in failing to find his herniated cervical discs, status post hemicolectomy, obesity, and shoulder bursitis to be severe impairments. Plaintiff's Brief, pp. 18-20.

Because the ALJ erred in failing to fully develop the record, the Court need not reach whether the ALJ erred at step two of the sequential evaluation.

### d) The RFC is Necessarily Flawed

Plaintiff argues that the RFC is not supported by substantial evidence. Plaintiff's Brief, pp. 20-22.

Because of the inadequacies of the current record, the RFC is necessarily flawed.

### e) The Court Need Not Reach Whether the ALJ Erred at Step Five of the Sequential Analysis

Plaintiff argues that the ALJ erred in finding Plaintiff not disabled based on Medical-Vocational Rule 202.11. Plaintiff further argues that the case should be remanded solely for calculation of benefits based on Medical-Vocational rule 201.09[9] and 201.20.[10] Id.

The Court has recommended remand for failure to properly develop the record. Thus, the Court need not reach whether the ALJ erred in relying on Medical-Vocational Rule 202.11 in finding Plaintiff not disabled. The Court will not recommend remand solely for calculation of benefits. Rather, the Court recommends remand for further development of the record. See Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal citations omitted) ("[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard," the Second Circuit has indicated that remand "for further development of the evidence" is proper).

3.   Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL

---

[9] Medical-Vocational Rule 201.09 directs a finding of disabled for an individual closely approaching advanced age with a limited or less education, who can perform sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.09.

[10] Medical-Vocational Rule 201.20 directs a finding of disabled for a younger individual with a limited or less education, who can perform sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.20.

267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Given the deficiencies in the record as outlined above it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV.   Conclusion

After carefully examining the administrative record, the Court finds that the ALJ erred in assessing Plaintiff's credibility as well as in failing to fully develop the record. It is therefore recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Victor E. Bianchini
United States Magistrate Judge

DATED:   Syracuse, New York
April 23, 2010

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in

accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**
*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

          Syracuse, New York
DATED:    April 23, 2010